**+IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

| | | |
|---|---|---|
| **ASHLEY THOMAS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:24-cv-01236-STA-jay** |
| | ) | |
| **JACOB NICKELL and MICHAEL ALLEN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff Ashley Thomas filed this action for malicious prosecution against Defendants Deputy Jacob Nickell and Deputy Michael Allen pursuant to 42 U.S.C. § 1983.[1] Plaintiff has filed a motion for summary judgment (ECF No. 24) to which Defendants filed a response. (ECF No. 36.) Plaintiff then filed a reply to Defendants' response. (ECF No. 43.) Subsequently, Defendants filed their own motion for summary judgment. (ECF No. 46.) Plaintiff has filed a response to Defendants' motion (ECF No. 49), and Defendants have filed a reply to Plaintiff's response. (ECF No. 50). For the reasons set forth below, Defendants' motion is **GRANTED**, and Plaintiff's motion is **DENIED**.

<u>Standard of Review</u>

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R.

---

[1]  The parties agree that any claim Plaintiff might have had for unlawful arrest is barred by the statute of limitations.

Civ. P. 56(c). When deciding a motion for summary judgment, the Court must review all the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in favor of the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court "may not make credibility determinations or weigh the evidence." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014).

When the motion is supported by documentary proof such as depositions and affidavits, the non-moving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 360 (6th Cir. 2014). These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the non-moving party is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. The Court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Statement of Undisputed Material Facts

Pursuant to the Local Rules of this Court, the parties have prepared statements of material facts "to assist the Court in ascertaining whether there are any material facts in dispute." Local Rule 56.1(a). Each party has responded to the movant's statement and has submitted statements of additional facts. These additional facts have been responded to.

A fact is material if it "might affect the outcome of the lawsuit under the governing

2

substantive law." *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015) (citing *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir. 1994), and *Anderson,* 477 U.S. at 247–48). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. For purposes of summary judgment, a party asserting that a material fact is not genuinely in dispute must cite particular parts of the materials in the record and show that the materials fail to establish a genuine dispute or that the adverse party has failed to produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c)(1). The non-moving party must respond to the movant's statement of fact "by either (1) agreeing that the fact is undisputed; (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) demonstrating that the fact is disputed." Local Rule 56.1(b). Additionally, the non-movant may "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

If the non-movant asserts that a genuine dispute of material fact exists, it must support its contention with a "specific citation to the record." Local Rule 56.1(b). If a party fails to demonstrate that a fact is disputed or fails to address the opposing party's statement of facts properly, the Court will "consider the fact undisputed for purposes" of ruling on the motion. Fed. R. Civ. P. 56(e)(2); *see also* Local Rule 56.1(d) ("Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes of summary judgment."). Under Rule 56 of the Federal Rules of Civil Procedure, the Court "need consider only the cited materials" but has discretion to "consider other materials in the record." Fed. R. Civ. P. 56(c)(3). With the Court's permission (ECF No. 38), Defendants submitted videos of the underlying events that led to Plaintiff's claim. In ruling on a motion for summary judgment,

a Court may rely on "the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007).

The Court finds that there is no genuine dispute as to the following facts unless otherwise noted. [2]

On July 7, 2023, around 2:00 a.m., Madison County Deputy Jacob Nickell was asked by Deputy Chloe Swann to monitor a gold Toyota Echo near Campbell Street and North Highland Avenue. Deputy Nickell observed the vehicle parked near a Walgreens Store and saw an individual approach the driver. Deputy Nickell believed that the individual conducted a hand-to-hand transaction with the driver before getting into the back seat of the vehicle.

The Toyota Echo drove away and began traveling north on Campbell Street. Deputy Nickell began following the vehicle. The vehicle eventually turned down a dead-end road. Deputy Nickell waited at the intersection of Ingram and Catalina to see if the vehicle would come back out. The vehicle eventually returned about thirty seconds later with the same number of occupants.

The vehicle was driven by Reem Cooper, a non-party to this action. The vehicle almost struck Deputy's Nickell's patrol vehicle before Nickell initiated the stop.[3] Deputy Nickell approached the vehicle and repeatedly requested that Cooper lower his window, provide identification, and exit the vehicle. Additional deputies arrived on the scene for backup. After

---

[2] The parties also state that some facts are disputed only for the purpose of the Court's deciding the motion for summary judgment. At other times, a party has noted that a particular statement does not contain material facts that must be decided in order to resolve any substantive claim or defense but concedes that the statement is undisputed for purposes of ruling on the parties' competing motions for summary judgment. All facts are stated for the purpose of deciding these motions only.

[3] After a criminal trial, Cooper was found guilty of failure to maintain his lane in violation of Tennessee law.

warning that force would be used, Deputy Nickell broke the driver's side window to open the door and physically removed Cooper from the vehicle.

Plaintiff was seated in the front passenger seat of the vehicle during the entirety of these events. After Cooper was removed and secured, Deputy Nickell ordered Plaintiff to exit the vehicle, but she refused.[4]  Deputy James Bingham, a non-party, also ordered Plaintiff to exit the vehicle multiple times. Deputy Bingham unlocked the front passenger door of the vehicle, and non-party Tennessee Highway Patrol Trooper Joseph Fox opened the front passenger door. Trooper Fox unbuckled Plaintiff's seatbelt and placed his right hand on Plaintiff's right wrist while removing her seat belt. After Trooper Fox cleared the seatbelt, he reestablished his grip on Plaintiff's right wrist and placed his left hand on her right arm in order to remove her from the vehicle. He then physically removed her from the vehicle.

Deputy Nickell later testified that, "She was at that point simply sitting in the vehicle, refusing to exit, refusing to get out, despite the commands being given to her. And then as far as being pulled out of the vehicle, I don't believe that she – I don't recall there being active resistance at that point."  Deputy Nickell was not asked whether Plaintiff displayed active resistance at any later point.

Plaintiff acknowledges making a "minimal, passive movement to adjust or switch the hand in which she was holding her cellphone" but denies physically resisting Trooper Fox's efforts to remove her from the car. After Trooper Fox removed Plaintiff from the vehicle, he put her on the ground and cuffed her right wrist.[5]  Plaintiff did not give Trooper Fox her left hand when Trooper

---

[4]  Plaintiff repeatedly describes her actions in refusing to exit the vehicle as "passive noncompliance."

[5] Defendants state that Trooper Fox "placed" her on the ground; Plaintiff says that she was "dragged" to the ground. This difference in verbiage is not relevant to the resolution of the motions.

Fox told her to do so. Instead, she made a movement with her left hand. She states that the movement was directed toward handing her phone to the minor occupant of the vehicle and was not meant to constitute refusal or resistance. She describes her arm movement as "incidental" and as a result of Trooper Fox's exerting force.

Deputy Bingham assisted Trooper Fox by pulling Plaintiff's left arm behind her back to handcuff her. Trooper Fox then assisted Plaintiff off the ground and onto her feet. Once she stood up, Plaintiff screamed as Trooper Fox attempted to escort her to a patrol unit. Plaintiff characterizes this as reflecting her "distress" at seeing her nephew arrested and not "physical resistance or an attempt to evade escort." Trooper Fox took Plaintiff to a patrol unit for transport to the jail.

Deputy Nickell spoke to Plaintiff at the scene of the stop after she had been taken into custody and asked Plaintiff to identify herself. Plaintiff refused. When she refused to identify herself, Plaintiff was already under arrest and was going to be taken to jail regardless of whether she identified herself.

Plaintiff was taken into custody and charged with resisting arrest pursuant to Tenn. Code Ann. § 39-16-602 and failure to produce identification pursuant to Tenn. Code Ann. § 7-3-505.

Tenn. Code Ann. § 39-16-602 provides in relevant part:

(a) It is an offense for a person to intentionally prevent or obstruct anyone known to the person to be a law enforcement officer, or anyone acting in a law enforcement officer's presence and at the officer's direction, from effecting a stop, frisk, halt, arrest or search of any person, including the defendant, by using force against the law enforcement officer or another.

(b) Except as provided in § 39-11-611, it is no defense to prosecution under this section that the stop, frisk, halt, arrest or search was unlawful.

(c) It is an offense for a person to intentionally prevent or obstruct an officer of the state or any other person known to be a civil process server in serving, or attempting to serve or execute, any legal writ or process.

6

At the time of the traffic stop on July 7, 2023, Deputy Nickell believed that, as a law enforcement officer in the State of Tennessee, he could charge an individual who refused to provide proper identification during a traffic stop with failure to produce identification pursuant to Tenn. Code. Ann. § 7-3-505.  However, that section applies only to police or peace officers or employees of a metropolitan government acting for the purpose of issuing a citation or civil warrant.

> When any police or peace officer of a metropolitan government or any employee of a metropolitan government authorized to enforce ordinances, laws or regulations of the metropolitan government or charged with the duty to serve civil or criminal process, asks the violator for identification for the purpose of issuing a citation or civil warrant to that person, the failure to produce or give such identification shall be grounds for the violator to be arrested by an officer authorized to make arrests pursuant to title 40, chapter 7. In such event, the violator shall be arrested, transported to the police station or jail, booked, photographed and fingerprinted for identification purposes and, thereafter, shall be served with the citation or civil warrant and released from custody without being required to post a bond.

Tenn. Code. Ann. § 7-3-505.

Deputy Nickell is a county sheriff's officer, not a metropolitan officer, and was not issuing a citation or civil warrant to Plaintiff.  Deputy Nickell had previously charged individuals with failure to produce identification pursuant to § 7-3-505.

After the traffic stop concluded, Deputy Nickell went to Jackson Madison County Hospital ("JMCGH") so that Reem Cooper could be evaluated by medical personnel. Another officer took Plaintiff to the Madison County Jail.

While Deputy Nickell was at JMCGH, he spoke to Trooper Fox on the telephone about the incident. Trooper Fox advised Deputy Nickell of his recommendation that Plaintiff be charged with resisting stop, halt, frisk, arrest pursuant to Tenn. Code Ann. § 39-16-602.  Deputy Bingham informed Deputy Nickell that Plaintiff refused to comply with officer directives to exit the vehicle and argued with officers during the stop.

7

Deputy Nickell's dash camera as well as another deputy's (Bobby Brewer) dash camera footage captured portions of the relevant events. Before preparing the Affidavit of Complaint, Deputy Nickell reviewed the dash camera footage and observed Plaintiff's actions. Trooper Fox was wearing a body-camera at the time of the traffic stop, which captured portions of the events which are the subject of this lawsuit.

Deputy Nickell prepared an Affidavit of Complaint assessing charges of resisting stop, halt, frisk, arrest pursuant to Tenn. Code Ann. § 39-16-602 and failure to produce identification pursuant to Tenn. Code Ann. § 7-3-505. Because Deputy Nickell's shift ended before he could present the Affidavit of Complaint to the Madison County General Sessions Clerk, Deputy Michael Allen signed and presented the Affidavit of Complaint to the Clerk based on the representations Deputy Nickell made to him. Deputy Nickell explained the reasons for Plaintiff's charges to Deputy Allen, and Allen signed the Affidavit of Complaint because Nickell was no longer on duty. After Deputy Allen presented the Affidavit of Complaint to the Clerk, the Clerk determined that there existed probable cause to believe that Plaintiff committed criminal offenses in violation of Tenn. Code Ann. § 39-16-602 and Tenn. Code Ann. § 7-3-505 based upon the facts Deputy Nickell asserted in the Affidavit of Complaint.

Deputy Allen was not present at the subject traffic stop on July 7, 2023. Deputy Allen did not arrest Plaintiff on July 7, 2023.  Deputy Nickell did not remove Plaintiff from the vehicle or place Plaintiff in custody.

Plaintiff was released from the Jail on her own recognizance on July 8, 2023. She was incarcerated for approximately thirty-two hours before being released. Plaintiff was not mandated to participate in any pretrial release program.

On November 14, 2023, a preliminary hearing was held before Judge Hugh Harvey Jr. in Madison County General Sessions Court. The Court dismissed all charges against Plaintiff for lack of probable cause.

Madison County Sheriff's Office is not part of a metropolitan government. Neither Deputy Nickell nor Deputy Allen was a police or peace officer of a metropolitan government at the time of Plaintiff's arrest.

No officer on the scene of the incident, including Deputy Nickell, was attempting to serve a citation or civil warrant issued to Plaintiff at the time of her arrest. Deputy Nickell did not request Plaintiff's identification until after she had been arrested.

Analysis

"Section 1983 creates a federal cause of action against state or local officials who deprive a person of a federal right while acting under the color of state law." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). To prevail on a § 1983 claim, a plaintiff must show (1) deprivation of a constitutional right and (2) that a person acting under color of state law caused the deprivation. *See Dominguez v. Corr. Med. Servs*., 555 F. 3d 543, 549 (6th Cir. 2009). It is undisputed that, in this case, Deputy Nickell and Deputy Allen were acting under color of state law at the time of the relevant events.

Government officials typically invoke the defense of qualified immunity to shield themselves from personal liability "for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Richards v. Cnty. of Washtenaw*, 818 F. App'x 487, 490 (6th Cir. 2020) (same citing *Harlow*). That is, "[t]he doctrine of qualified immunity insulates public officials from liability under 42 U.S.C. § 1983 unless the caselaw

9

existing at the time of their actions clearly established that they violated the Constitution." *Lawler v. Hardeman Cnty.*, 93 F.4th 919, 921 (6th Cir. 2024).

A "plaintiff who brings a § 1983 action against such an official bears the burden of overcoming the qualified-immunity defense." *Richards*, 818 F. App'x at 490 (citing *Bunkley v. City of Detroit*, 902 F.3d 552, 559 (6th Cir. 2018)). To overcome this burden at the summary-judgment stage, the plaintiff must show that (1) the defendant violated a constitutional right and (2) the right was clearly established such that a reasonable officer would understand that the conduct was unlawful, *id.*, while the defendant has the burden of showing that his conduct was objectively reasonable under then-existing law. *See Howell v. Hambright*, 2026 WL 1682583, at *3 (E.D. Mich. June 10, 2026) (citing *Tucker v. City of Richmond*, 388 F.3d 216, 220 (6th Cir. 2004)). "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008) (citations omitted). Additionally, "[q]ualified immunity applies regardless of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact." *Howell v. Ohio State Hwy Patrol Subdivision*, 2019 WL 6465508, at *5 (S.D. Ohio Dec. 2, 2019), rep.& rec. adopted, 2020 WL 33127 (S.D. Ohio Jan. 2, 2020) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)).

Plaintiff claims that Defendants' actions violated her right to be free from malicious prosecution. The Sixth Circuit "recognize[s] a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment," which "encompasses wrongful investigation, prosecution, conviction, and incarceration." *Sykes v. Anderson*, 625 F.3d 294, 308

10

(6th Cir. 2010) (*quoting Barnes v. Wright*, 449 F.3d 709, 715–16 (6th Cir. 2006) (internal quotation

marks omitted)). To establish a claim for malicious prosecution, a plaintiff must show that:

> (1) a criminal prosecution was initiated against the plaintiff and the defendant made,
> influenced, or participated in the decision to prosecute; (2) there was no probable
> cause for the criminal prosecution; (3) as a consequence of the legal proceeding,
> the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4)
> the criminal proceeding was resolved in the plaintiff's favor.

*Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015).

Looking first at the claims against Deputy Allen, the Court finds that he is entitled to

qualified immunity. The undisputed facts show that Deputy Nickell prepared an Affidavit of

Complaint against Plaintiff with charges of resisting stop, halt, frisk, arrest pursuant to Tenn. Code

Ann. § 39-16-602 and failure to produce identification pursuant to Tenn. Code Ann. § 7-3-505.

Because Deputy Nickell's shift ended before he could present the Affidavit of Complaint to the

Madison County General Sessions Clerk, Deputy Allen signed and presented it to the Clerk based

on the representations Deputy Nickell made to him.

The Sixth Circuit examined a similar claim in *Miller v. Davis*, 653 F. App'x 448 (6th

Cir. 2016).

> Sixth Circuit law dictates that a claim for malicious prosecution against a police
> officer cannot survive without evidence that the officer caused the plaintiff to be
> prosecuted. *See Skousen v. Brighton High Sch.*, 305 F.3d 520, 529 (6th Cir. 2002)
> (holding that when "[t]here is no evidence that [the officer] made or even was
> consulted with regard to the decision to prosecute [the plaintiff]," the officer cannot
> be held liable for malicious prosecution). Here, no evidence suggests that Ullom
> [the investigating detective] made, influenced, or participated in [Assistant State
> Prosecutor] Sleeper's decision to prosecute the Millers.
>
> The Millers insist that Ullom's report — indisputably fundamental to the
> commencement of the criminal proceedings against them — reflects a defective
> investigation. They contend that Ullom knowingly provided false information to
> Sleeper, who in turn misled the jury, resulting in their improper indictment and
> arrest. True, an officer may be held liable "for making materially false statements
> either knowingly or in reckless disregard for the truth to establish probable cause
> for an arrest." *Gregory v. City of Louisville*, 444 F.3d 725, 758 (6th Cir. 2006)

11

(citing *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989)). But the Millers have presented no evidence that Ullom provided false information to Sleeper, that Ullom knew that such information was false, or that the information was material.

*Miller*, 653 F. App'x at 455–56. Likewise, in this case, Plaintiff has pointed to no evidence in the record that Deputy Allen knowingly presented any false information in the affidavit that caused her to be prosecuted. Instead, Deputy Allen was merely a passive or neutral participant in the prosecution of Plaintiff. *See Webb v. United States*, 789 F.3d 647, 660 (6th Cir. 2015) ("[T]he term 'participated' should be construed within the context of tort causation principles. Its meaning is akin to 'aided.' To be liable for 'participating' in the decision to prosecute, the officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating." (citation omitted). *See also Richards*, 818 F. App'x at 493-94 ("[M]erely filing an allegedly misleading case report, without more active participation, qualifies only as 'passive or neutral' participation and is thus an insufficient basis for a malicious-prosecution claim."); *Kinkus v. Vill. of Yorkville*, 289 F. App'x. 86, 91 (6th Cir. 2008) (holding that an officer's actions of only filing a police report, signing a blank criminal complaint, and soliciting a written report from another officer was insufficient to establish a malicious prosecution claim).

Here, a reasonable officer in Deputy Allen's position would have believed that he could rely on representations made by Deputy Nickell in executing and submitting the Affidavit of Complaint to the General Sessions Court Clerk. *See United States v. Hensley*, 469 U.S. 221, 231 (1985) (quoting *United States v. Robinson*, 536 F.2d 1298, 1300 (1976) ("The Ninth Circuit there noted 'that effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another.'")). Thus, Deputy Allen is immune from Plaintiff's claims in this lawsuit.

12

Turning now to Deputy Nickell, the Court finds that he also is entitled to qualified immunity. There is no dispute that Plaintiff has shown the fourth element of her claim, *i.e.*, a criminal prosecution was initiated against her which was resolved in her favor. However, Defendant Nickell claims that Plaintiff cannot show that he acted with the necessary blameworthiness (element one) or that a reasonable officer in his position would have known that there was no probable cause for the criminal prosecution (element two) and that, as a consequence of the legal proceeding, Plaintiff suffered a deprivation of liberty apart from the initial seizure (element three).

Under the first element of a malicious prosecution claim, the plaintiff must show that the officer "influenced or participated in the decision to prosecute." *Sykes*, 625 F.3d at 311-12. Moreover, the defendant officer's participation must have been "marked by some kind of blameworthiness, something beyond mere negligence or innocent mistake." *Sampson v. Mackinaw City,* 685 F. App'x 407, 417 (6th Cir. 2017) (citing *Johnson*, 790 F.3d at 655). An officer will not be deemed to "have commenced a criminal proceeding against a person when the claim is predicated on the mere fact that the officer turned over to the prosecution the officer's truthful materials." *Sykes*, 625 F.3d at 314.

Defendant argues that Plaintiff has pointed to no evidence in the record that he deliberately or recklessly presented falsehoods which resulted in her prosecution. Plaintiff counters that the Affidavit of Complaint contains no facts showing that she used force against an officer (an essential element of Tenn. Code Ann. § 39-16-602) and no facts showing that any metropolitan officer was serving process (an essential element of Tenn. Code Ann. § 7-3-505). Plaintiff acknowledges that an officer violates a plaintiff's clearly established right to freedom

13

PageID 422

from malicious prosecution under the Fourth Amendment "only when his deliberate or reckless falsehoods result in arrest and prosecution without probable cause." *Johnson*, 790 F.3d at 655.

The facts in the Affidavit of Complaint as they relate to Plaintiff are:

Upon making contact with the vehicle, the front seat passenger refused to exit the vehicle. She was given multiple commands to exit but refused and was eventually removed and taken into custody. She refused to identify herself but a TN DL was found in the vehicle which belonged to her.

(ECF No. 24-3). Defendant points out that these facts are true. Plaintiff did refuse to exit the vehicle after being given multiple commands to exit. And she did refuse to identify herself. Moreover, as the Court previously found as an undisputed fact, Plaintiff has acknowledged making a "minimal, passive movement to adjust or switch the hand in which she was holding her cellphone" (while denying that she physically resisted Trooper Fox's efforts to remove her from the car.) She also acknowledges that, after Trooper Fox removed her from the vehicle and while attempting to handcuff her, she did not give him her left hand after being instructed to do so. She denies that her left-hand movement was resistance to being arrested and claims that, instead, the movement was a result of Deputy Fox's exerting force.

Tennessee courts define "force" as used in Tenn. Code Ann. § 39-16-602 "broadly" and have "consistently held that a defendant's efforts in preventing an officer from handcuffing him are sufficient to support the element of force." *Mart v. Cheatham Cnty. Sheriff's Dep't*, 2025 WL 3000199, at *9 (M.D. Tenn. Oct. 24, 2025) (citing *State v. Forkpa*, 2020 WL 6707659, at *6 (Tenn. Ct. Crim. App. Nov. 16, 2020)). Plaintiff describes her resistance as "passive." And, while she is correct that "'[p]assive resistance' generally does not constitute using force as contemplated by the preventing or obstructing an arrest statute," *State v. Burgess*, 532 S.W.3d 372, 393 (Tenn. Crim. App. 2017), in this case, Deputy Nickell could have reasonably perceived that Plaintiff did,

14

in fact, use force to resist being handcuffed.[6] *C.f.*, *State v. Corder*, 854 S.W.2d 653, 655 (Tenn. Crim. App. 1992) (dismissing resisting arrest charge when the defendant merely "refused to get into the patrol car and used obscene language at the officers"). *See State v. Grimes*, 2002 WL 1885053, at *4 (Tenn. Crim. App. Aug. 16, 2002) ("In the instant case, the evidence reveals that defendant not only used obscenities at the police but also locked his arms, thus preventing the officers from putting handcuffs on him. He also threw his arms back and 'bowed up' on them as they attempted to arrest him. Construing the term 'force' broadly as we are required to do, we conclude that there is sufficient evidence to support defendant's conviction for resisting arrest."); *State v. Hayes*, 2024 WL 4948586, at *9 (Tenn. Crim. App. Dec. 3, 2024), appeal denied (May 23, 2025) (finding that "a defendant's effort to prevent an officer from placing handcuffs on the defendant is 'sufficient to support the element of force'" (citations omitted)).

The Court is mindful that, at the preliminary hearing, Deputy Nickell testified that he did not recall physical resistance at the time Plaintiff was pulled out of the vehicle. However, Deputy Nickell's testimony centered on one point in time ("I don't recall there being active resistance **at that point**.") and did not take into account Trooper Fox's later statements to him or his review of the video footage.  It is undisputed that Trooper Fox advised Deputy Nickell that Plaintiff should be charged with resisting stop, halt, frisk, arrest pursuant to Tenn. Code Ann. § 39-16-602. Accordingly, Deputy Nickell's averment that Plaintiff violated Tenn. Code Ann. § 39-16-602 was reasonable in light of the facts as he knew them, nor did he make any factual misstatements in the

---

[6] This is not to say that Plaintiff intended to actively resist her arrest or being handcuffed – only that Deputy Nickell could have reasonably believed that she was actively resisting arrest. Plaintiff's motivation in pulling away does not factor into a determination as to whether the officers reasonably believed that she was resisting arrest.

15

Affidavit of Complaint, and, thus, Plaintiff cannot establish the first element of her malicious prosecution claim.

The Court's inquiry could end at this point because the "inability to demonstrate all elements of malicious prosecution is fatal to a plaintiff's claim for malicious prosecution." *Barnhart v. Carroll Cnty., Ohio*, 2015 WL 7455566, at *3 (N.D. Ohio Nov. 23, 2015) (citations omitted). *See also Phat's Bar & Grill v. Louisville Jefferson Cty. Metro Gov't*, 918 F. Supp. 2d 654, 661 (W.D. Ky. 2013) ("Defendant Smith would succeed on his summary judgment motion if he disproves any one of these essential elements" of a malicious prosecution claim). However, in the interest of judicial economy and future review, the Court will proceed with discussing the other elements of Plaintiff's claim.

Next, the Court must determine if there was probable cause for the criminal proceeding. The Court finds that there was based on the facts as described above. Plaintiff has acknowledged pulling her hand away while being handcuffed. Under Tennessee state law, as previously discussed, her pulling away equates to the "force" necessary to support a charge of resisting stop, halt, frisk, arrest pursuant to Tenn. Code Ann. § 39-16-602. As explained in *France v. Lucas*, 836 F.3d 612 (6th Cir. 2016),

> A malicious prosecution claim under § 1983 fails "when there was probable cause to prosecute." Probable cause exists when the "facts and circumstances within the officer's knowledge" are "sufficient to warrant a prudent person ... in believing ... that the suspect has committed, is committing or is about to commit an offense." We must assess the existence of probable cause "from the perspective of a reasonable officer ... rather than with the 20/20 vision of hindsight."

*Id.* at 625 (citations omitted). In bringing the charges against Plaintiff, Deputy Nickell relied on information he received from Trooper Fox, his review of the video footage, and his own observations. From Deputy Nickell's perspective, the Court finds that the "facts and circumstances" leading to Plaintiff's arrest were sufficient to lead him to believe that Plaintiff had

16

violated § 39-16-602. *See generally*, *Kaley v. United States*, 571 U.S. 320, 338 (2014) (reminding courts that probable cause is not a "high bar" - it requires only the "kind of 'fair probability' on which "reasonable and prudent" people act).

Contrarily, no probable cause existed to charge Plaintiff with failure to produce identification under Tenn. Code. Ann. § 7-3-505. Plaintiff rightly notes that § 7-3-505 is narrow in scope and applies only when (1) the officer is a "police or peace officer of a metropolitan government," and (2) identification is requested for the purpose of issuing a citation or civil warrant. Neither condition is satisfied here. Defendant Nickell was a Madison County Sheriff's Deputy - not a police officer of a metropolitan government - and he was not attempting to serve a citation or civil warrant on Plaintiff. Thus, there was no probable cause for Plaintiff's arrest under § 7-3-505.

Deputy Nickell contends that, if probable cause existed for any charge, a malicious prosecution claim fails under the caselaw at the time of Plaintiff's arrest. *See*, *e.g.*, *Howse v. Hodous*, 953 F.3d 402, 409 (6th Cir. 2020) ("Under the Fourth Amendment, an officer can seize someone so long as he has probable cause that the person has violated the law.") Thus, according to Defendant's reasoning, since there was probable cause for her arrest for a violation of § 39-16-602 (and possibly under Tenn. Code Ann. § 55-8-104 – Compliance with lawful orders or directions of police officers), then the lack of probable cause for an arrest for a violation of § 7-3-505 cannot support a finding of the element of "no probable cause." Defendant acknowledges that the Supreme Court called *Howse* into question in *Chiaverini v. City of Napoleon*, 602 U.S. 556 (2024).

In that case, the Supreme Court, reversing a decision by the Sixth Circuit that had relied on *Howse*, held that, "when an official brings multiple charges, only one of which lacks probable

17

cause," the "valid charges do not create a create a categorical bar" that "insulate[s] the official from a Fourth Amendment malicious-prosecution claim relating to the invalid charge." *Id.* at 558-59. But, as Defendant points out, *Chiaverini* was issued after Plaintiff's arrest on July 7, 2023. "The doctrine of qualified immunity insulates public officials from liability under 42 U.S.C. § 1983 unless the caselaw existing at the time of their actions clearly established that they violated the Constitution." *Lawler,* 93 F.4th at 921. Accordingly, Deputy Nickell was entitled to rely on the caselaw that existed at the time of Plaintiff's arrest, which was the ruling in *Howse*. Because there was probable cause for at least one valid charge, Deputy Nickell could have reasonably believed that he had probable cause for the arrest in light of clearly established law (*Howse*) and the information possessed at the time by him.

Next, Defendant contends that Plaintiff cannot satisfy the third element of a malicious prosecution claim because she did not suffer a deprivation of liberty as a consequence of the prosecution. It is undisputed that Plaintiff was in custody after her arrest for approximately thirty-two hours before being released and she was not mandated to participate in any pretrial release program. Defendant relies, in part, on *Briner v. City of Ontario*, 2011 WL 866464 (N.D. Ohio Mar. 9, 2011), for the proposition that there is no "deprivation of liberty" when a plaintiff is forced to stand trial and the court grants the plaintiff's motion to dismiss following the close of the government's case in chief. While this may be an accurate reading of the holding in *Briner*, it is not applicable to the facts in the present case because the Briner plaintiff "was issued a summons; she was not arrested. There was no bond required and there is nothing in the record to suggest that she had any restrictions placed on her movements prior to trial." *Id.* *4. There is nothing in *Briner* to suggest that the plaintiff was jailed after her arrest.

Likewise, in *Hopkins v. Sellers*, 2011 WL 2173859, at *2 (E.D. Tenn. June 2, 2011), also relied on by Defendant, "Plaintiff was never incarcerated, detained, made to pay bond, or placed under any other restrictions." Defendant also relies on *Noonan v. Cnty. of Oakland*, 683 F. App'x 455 (6th Cir. 2017), but in *Noonan*, the plaintiff "was never physically arrested or incarcerated on these charges." *Id.* at 459. Also, in *Cummin v. North*, 731 F. App'x 465, 472 n. 4 (6th Cir. 2018), the plaintiff "was not handcuffed, arrested, jailed, or taken into custody."

Plaintiff cites *Miller v. Maddox*, 866 F.3d 386 (6th Cir. 2017), in support of her argument that her post-arrest incarceration constituted a deprivation of liberty. While *Miller* focused on the plaintiff's participation in a pretrial release program which it found constituted "a deprivation of liberty separate from the initial seizure," *id.* at 393, the Court also noted that Miller had been arrested and incarcerated. That court distinguished its facts from those in *Noonan* because the *Noonan* plaintiff was "never arrested or **incarcerated**, required to post bail or bond, or subjected to any travel restrictions." *Id.* (emphasis added).

The plaintiff in *Wright v. City of Euclid, Ohio,* 962 F.3d 852, 877 (6th Cir. 2020), argued that "he suffered a deprivation of liberty beyond the initial seizure because he was confined in the jail and in the hospital for many hours after the initial seizure but before being released." The Court found this sufficient to present a jury question. *Id.* Based on this authority, the Court finds that Plaintiff's incarceration after her arrest constituted a deprivation of liberty. Thus, Plaintiff has shown this element of her claim.

However, although Plaintiff has shown elements three and four of her claim as to Deputy Nickell, she has not shown all the elements as required; thus, she has not met her burden of showing that Deputy Nickell violated her clearly established Fourth Amendment right to be free from malicious prosecution based on clearly established law at the time of her arrest and is not entitled

19

to qualified immunity. She has also not shown that Deputy Allen violated her Fourth Amendment rights. Because Defendants are entitled to qualified immunity, Plaintiff's motion for summary judgment must be **DENIED** and Defendants' motion **GRANTED**.

The Clerk of the Court is **DIRECTED** to enter judgment accordingly.

IT IS SO ORDERED.

**s/ S. Thomas Anderson**
S. Thomas Anderson
United States District Judge

Date:  August 4, 2026.